UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERYL BRODSKY,

                              Plaintiff,

                – against –

THE NEW YORK CITY CAMPAIGN
FINANCE BOARD, VIA JAMES E.
JOHNSON, CORPORATION COUNSEL
OF THE CITY OF NEW YORK, AND THE
NEW YORK CITY SHERIFF (NON
PARTY),

                              Defendants.

**OPINION & ORDER**

21 Civ. 5004 (ER)

RAMOS, D.J.:

        Meryl Brodsky filed this action on January 6, 2021, alleging fraud on the court and

asking the court to reverse prior judgments levied against her in state court, pursuant to Fed. R.

Civ. P. 60(d).  On December 14, 2021, defendant New York City Campaign Finance Board

("CFB") moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject-

matter jurisdiction, and Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Doc. 17.  For the

reasons set forth below, the motion to dismiss is GRANTED.

        I.        **BACKGROUND**[1]

---

[1] The facts discussed herein are based on the allegations in the complaint, which the court accepts as true for
purposes of the instant motion.  *See, e.g., Koch v. Christie's Int'l PLC*, 699 F. 3d 141, 145 (2d Cir. 2012).  In
deciding a motion to dismiss, the court may consider documents and facts that are "referenced in the complaint,
documents that the plaintiffs relied on in bringing suit and that are either in the plaintiffs' possession or that the
plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken."  *Silsby v. Icahn*, 17 F.
Supp. 3d 348, 354 (S.D.N.Y. 2014), *aff'd sub nom. Lucas v. Icahn*, 616 F. App'x. 448 (2d Cir. 2015) (summary
order) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)); *see also DiFolco v. MSNBC Cable
L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  To be incorporated into the complaint by reference, "the [c]omplaint must
make a clear, definite and substantial reference to the documents" and facts.  *Mosdos Chofetz Chaim, Inc. v. Vill. of
Wesley Hills*, 815 F. Supp. 2d 679, 691 (S.D.N.Y. 2011) (internal quotation marks and citation omitted).  Since
Brodsky relies heavily on references to the related Second Circuit and New York Supreme Court decisions that

Brodsky ran for a seat on the New York City Council in the 2005 primary election.  Her election committee, Elect Meryl Brodsky to the City Council 2005 (the "Committee"), participated in the CFB's matching funds program, through which candidates running for office who meet a fundraising threshold can receive money from the City equivalent to certain defined contributions received from New York City residents.  *Brodsky I*, 2016 WL 1258986, at *1; Doc. 1 ¶ 4; New York City, N.Y., Code § 3-701 *et seq*.  Her Committee received $55,776 from the program.  *Brodsky I*, 2015 WL 13746671, at *2.

When Brodsky lost, the CFB conducted an audit into the Committee.  On August 10 and 17, 2006, it released a letter and final audit report, respectively, requiring the Committee to repay $35,415 in unspent funds, including a $470 penalty for improper expenditures.  Doc. 1 ¶ 10; Doc. 18 at 2; New York City, N.Y., Code § 3-701 *et seq*.  Brodsky disagreed with this figure, and on September 15, 2006, wrote the CFB that the Committee owed only $26,010, and would only pay that amount.  Doc. 18 at 2.  *Brodsky I*, 2015 WL 13746671, at *2.  She then sued the CFB in New York State Supreme Court on December 11, 2006, arguing that the CFB had calculated incorrectly.  *See* Doc. 1 ¶¶ 6–9; *Brodsky v. NYC Campaign Finance Bd.*, No. 0118316/2006, 2007 WL 2176918, at *2 (N.Y. Sup. Ct. June 21, 2007).  The case was heard by Justice Eileen Rakower.  Doc. 1 ¶ 22.  Justice Rakower held in a June 21, 2007, order that Brodsky owed the entire amount the CFB had calculated, and this decision was upheld by the New York State Appellate Division on December 30, 2008.  Doc. 18 at 2; *Matter of Brodsky v. New York City Campaign Fin. Bd.*, 869 N.Y.S.2d 508 (N.Y. App. Div. 2008).  Brodsky,

---

arose from her campaign for City Council in her complaint, the Court finds these incorporated into that document and depends on them in reciting the facts below.  *See, e.g., Brodsky v. Carter*, No. 15 Civ. 3469 (GBD) (DCF), 2015 WL 13746671, at *5 (S.D.N.Y. Dec. 15, 2015), *report and recommendation adopted sub nom. Brodsky v. New York City Campaign Fin. Bd.*, No. 15 Civ. 3469 (GBD) (DCF), 2016 WL 1258986 (S.D.N.Y. Mar. 28, 2016), *aff'd sub nom. Brodsky v. Carter*, 673 F. App'x 42 (2d Cir. 2016) (together *Brodsky I*).

however, only paid the $26,010 she believed her Committee owed.  *Brodsky I*, 2015 WL
13746671, at *2.

Justice Rakower then entered a judgment against Brodsky on August 31, 2009, for the
balance she owed to the CFB.  Following this judgment, the CFB served subpoenas on Brodsky
and on the Committee's accountant, Mark Feinsot, to produce her tax returns and other financial
information.  Doc. 20 at 23.  On December 4, 2009, Justice Rakower ruled that Brodsky was
required to respond to these subpoenas.  The CFB also moved the court to require an investor
services company, Computershare, to turn over a sufficient number of ExxonMobil shares that
Brodsky owned to make up this balance.  *Matter of Brodsky*, 971 N.Y.S.2d 265 (N.Y. App. Div.
2013).  On July 9, 2010, Justice Rakower issued an order requiring Computershare to remit these
shares, and since the balance was to be paid using stock garnishment, she ruled that Feinsot was
not obligated to release Brodsky's tax returns.  *Brodsky v. NYC Campaign Finance Bd.*, 2007
WL 2176918.  The Appellate Division affirmed this decision on June 20, 2013.  *Matter of
Brodsky*, 971 N.Y.S.2d at 265; *Brodsky I*, 2015 WL 13746671, at *3–*4.

Brodsky then commenced two federal lawsuits in this district.  The first was in 2015.
*Brodsky I*, No. 15 Civ. 3469 (GBD) (DF).  In that suit, Brodsky alleged that the CFB had
violated her constitutional rights, federal criminal law, the Internal Revenue Code, and state and
local law.  *Brodsky I*, 2015 WL 13746671, at *1.  Magistrate Judge Debra Freeman
recommended dismissal of the case for two reasons:  first, her § 1983 claims were time-barred;
and second, her other allegations either failed to state a cognizable claim or were not a
recognized personal cause of action.  *Id*. at *15.  Judge Daniels adopted the report, and Brodsky
appealed.  On December 8, 2016, the Second Circuit upheld Judge Daniels' decision, and also
held that the *Rooker-Feldman* doctrine—which stands for the "clear principle that federal district

courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments"—
barred Brodsky's § 1983 claims. *Brodsky I*, 673 F. App'x at 43; *Sung Cho v. City of New York*,
910 F.3d 639, 644 (2d Cir. 2018) (internal quotation marks omitted).

In the second suit, *Brodsky v. N.Y. City Campaign Fin. Bd.*, No. 17 Civ. 3186 (AJN),
Brodsky proffered essentially the same allegations as in her first federal suit, but included an
additional cause of action under 26 U.S.C. §§ 6103 and 7431 for unlawful disclosure of her tax
returns. Judge Nathan dismissed the complaint on *res judicata* grounds based on *Brodsky I*. She
stated that "res judicata bars subsequent action when: (1) the previous action involved an
adjudication on the merits and (2) the subsequent adjudication involves the same parties as the
previous action (or those in privity with them) and (3) claims asserted in the subsequent action
were or could have been raised in the previous action." *Brodsky II*, 2018 WL 3910825, at *2
(citing *Monahan v. Dep't of Corrs.*, 214 F.3d 275, 285 (2d Cir. 2000)). Since "[f]irst, [Brodsky's]
claims were already] litigated and dismissed with prejudice . . . [s]econd, the prior litigation
involved the same parties—Plaintiff and the Defendant[—a]nd finally . . . [Brodsky] did raise
[the same] claim in the earlier litigation," Judge Nathan found that *res judicata* applied. *Brodsky
II*, 2018 WL 3910825, at *2. The Second Circuit affirmed, finding the requirements for *res
judicata* to be met. *Brodsky II*, 796 F. App'x at 6.

The instant action, Brodsky's third in this court, again alleges substantially the same facts
and claims as in the first two federal actions with the addition of one new cause of action, "fraud
on the court" pursuant to Federal Rule 60(d). Specifically, Brodsky alleges that the CFB's
lawyers falsified the amount of money that the Committee had spent, that Justice Rakower
"knowingly incorporate[d these] misrepresentations . . . into a . . . money judgment," Doc. 1 ¶¶
9–10, and therefore lied in her orders, and that the defendants and Justice Rakower conspired to

perform "abusive discovery."  Doc. 18 at 5 (citing Doc. 1 ¶¶ 30–51).  She also adds James

Johnson, who was New York City's Corporation Counsel at the time Brodsky filed suit, though

the suit does not allege any specific complaint against him.  She asks for damages equaling the

amount of ExxonMobil stock garnished, plus interest; for any "pre or post-judgment interest and

costs"; and for a lien of $7,917 at the NYC Sheriff's Office to be expunged.  Doc. 1 at 25.

## II.     LEGAL STANDARD

When the issue before the Court involves a motion to dismiss pursuant to Rules 12(b)(1)

and 12(b)(6), the Court must consider the Rule 12(b)(1) motion first, *Baldessarre v. Monroe-*

*Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 499 (S.D.N.Y. 2011), *aff'd*, 496 F. App'x 131

(2d Cir. 2012), because "disposition of a Rule 12(b)(6) motion is a decision on the merits, and

therefore, an exercise of jurisdiction." *Chambers v. Wright*, No. 5 Civ. 9915 (WHP), 2007 WL

4462181, at *2 (S.D.N.Y. Dec. 19, 2007) (internal quotation marks and citation omitted).

The Court must dismiss the case for lack of subject matter jurisdiction if the Court "lacks

the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110,

113 (2d Cir. 2000) (citing Fed. R. Civ. P. 12(b)(1)).  The party asserting subject matter

jurisdiction bears the burden of establishing that jurisdiction exists by a preponderance of the

evidence.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting

*Makarova*, 201 F.3d at 113).  While the court accepts all material factual allegations in the

complaint as true, *Morrison*, 547 F.3d at 170 (quoting *Nat. Res. Def. Council v. Johnson*, 461

F.3d 164, 171 (2d Cir. 2006)), it does not presume the truthfulness of the complaint's

jurisdictional allegations, *Frisone v. Pepsico, Inc.*, 369 F. Supp. 2d 464, 469–70 (S.D.N.Y. 2005).

When evaluating a Rule 12(b)(1) motion, the court may consider evidence outside of the

pleadings to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. Ltd. v.*

*Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000); see also *Morrison*, 547 F.3d at 170

(citing *Makarova*, 201 F.3d at 113). The court should refrain from drawing inferences in favor of

the party asserting subject matter jurisdiction on a Rule 12(b)(1) motion. *People United for*

*Child., Inc.*, 108 F. Supp. 2d at 283 (citing *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,

968 F.2d 196, 198 (2d Cir.1992)).

   *Pro se* litigants' submissions "are held 'to less stringent standards than formal pleadings

drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 10 n.7 (1980) (per curiam) (quoting *Haines v.*

*Kerner*, 404 U.S. 519, 520 (1972)); see also *Young v. New York City Dep't of Educ.*, No. 09 Civ.

6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply

to briefs and opposition papers filed by *pro se* litigants). Although "pro se status 'does not

exempt a party from compliance with relevant rules of procedural and substantive law,'"

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (quoting *Traguth v. Zuck*,

710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro*

*se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'"

*McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d

787, 790 (2d Cir. 1994)).

## III.   DISCUSSION

### a. *Rooker-Feldman* Doctrine

   Defendants argue that Brodsky's fraud on the court action is barred by the *Rooker-*

*Feldman* doctrine, as her claims are essentially a request to reverse Justice Rakower's findings

and conclusions in state court. Doc. 18 at 10–11. The *Rooker-Feldman* doctrine stands for "the

clear principle that federal district courts lack jurisdiction over suits that are, in substance,

appeals from state-court judgments." *Hoblock v. Albany Cty. Bd. of Elections*, 422 F.3d 77, 84

(2d Cir. 2005).  The doctrine precludes cases brought in lower federal courts "by state-court

losers complaining of injuries caused by state-court judgments rendered before the district court

proceedings commenced and inviting district court review and rejection of those judgments."

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

The Second Circuit has articulated four requirements for the application of the *Rooker-*

*Feldman* doctrine:

> First, the federal-court plaintiff must have lost in state court.  Second, the plaintiff
> must complain of injuries caused by a state-court judgment.  Third, the plaintiff
> must invite district court review and rejection of that judgment.  Fourth, the state-
> court judgment must have been rendered before the district court proceedings
> commenced—i.e., *Rooker-Feldman* has no application to federal-court suits
> proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (brackets, quotation marks and citations omitted).

These four requirements are clearly met here.  First, Brodsky lost in state court.  Justice

Rakower ordered that:

> Petitioners' application seeking an order from the Court declaring as arbitrary and
> capricious and in violation of due process the Respondent Board's determination in
> that the Committee must pay $470 in penalties due to disqualified post-election
> expenditures is *denied*; and . . . that Petitioners' application seeking an order from
> the Court declaring as arbitrary and capricious and in violation of due process the
> Respondent Board's determination that the Committee must reimburse the Board
> $35,415 is *denied*; and . . . that Respondent's application that the Court order
> Petitioners to pay interest on their pending reimbursement obligations is *denied*;
> and . . . that respondent's application that the Court order Petitioners to immediately
> remit the monies that they are required to reimburse the Board is *granted*.

*Brodsky v. NYC Campaign Finance Bd.*, 2007 WL 2176918, at *6 (emphasis added).  Brodsky's

claims that her constitutional rights were violated were denied, as were her attempts to be repaid.

Further, Justice Rakower ordered Brodsky to repay the CFB in full.  While Justice Rakower did

grant Brodsky's application to declare that Feinsot was not personally liable for reimbursement

to the Board, she only granted this application because she had already "impose[d] liability for

any repayment to the Board on the Committee"; this does not change the fact that on each of her substantive claims, Brodsky lost. *Id*. at \*5. Indeed, Brodsky does not dispute that she lost in state court: her instant complaint is based on the idea that Justice Rakower's decisions upholding the CFB's calculation and requiring that her stocks be garnished were incorrect and procured by fraud.

The second *Rooker-Feldman* requirement is also met here. Brodsky's instant complaint alleges injuries caused by the state court judgment, since the "fraud on the court" on which it is based was purportedly effectuated by the parties in her state court case (and, allegedly, by the state court judge herself). Brodsky argues that defendants "intentionally made misrepresentations to the [state] court," that "the Judge knowingly incorporate[d] the misrepresentations into [her] decision," and that "[d]amages result[ed]" from these misrepresentations. Doc. 1 ¶¶ 68–69, 71(i). Indeed, in Brodsky's prayer for relief, she asks the court for damages for the loss of personal monies stemming from the garnishment of 223 shares of ExxonMobil stock. *Id*. at 25. Since Brodsky asks this Court to return stock that was garnished as a result of that state court order, she meets the requirement that her complaint arise from injuries occurring in state court.

The third requirement, then, is also met. In *Wenegieme v. U.S. Bank Nat'l Ass'n*, No. 16 Civ. 6548 (ER), 2017 WL 1857254, at \*7 (S.D.N.Y. May 4, 2017), *aff'd*, 715 F. App'x 65 (2d Cir. 2018), plaintiff asked that the Court reverse the foreclosure judgment that had allegedly been procured by fraud. The Court determined that it was barred from reviewing the request. Specifically, since the plaintiff asked the court to find that fraud had occurred at the state court level and requested title to the property based on that fraud, the *Rooker-Feldman* doctrine applied, and precluded the Court from granting relief. In other words, since the court would

have had to analyze whether the state court judgment came about because of fraud, and was thus incorrect, in order to determine whether it could reverse that judgment and give the plaintiff back the property the judgment had taken from him, *Rooker-Feldman* stopped the court from acting.

Here too, Brodsky asks for relief that can only be granted by reviewing of the state court decision. She explicitly asserts that Justice Rakower lied in her orders and that the damages she seeks are directly related to the harm those lies caused. The Court cannot determine whether she is entitled to the return of the ExxonMobil stock that was garnished without adjudicating it was taken from her due to fraud in which the state court was complicit.

Likewise, in *Fraccola v. Grow*, 670 F. App'x 34 (2d Cir. 2016), the Second Circuit found the *Rooker-Feldman* doctrine to apply when a plaintiff sued a state-court judge who he alleged had violated his rights in ordering a settlement resolving a business dispute in which the plaintiff was involved based on an *ex parte* request by the opposing party. Since the plaintiff sought "to overturn the stipulation and the subsequent state court orders upholding it," *Fraccola*, 670 F. App'x at 35, the court found that the third requirement was met. In the instant case, although Brodsky is not suing Justice Rakower herself, she does allege wrongdoing on Justice Rakower's part in concert with the opposing party, just as in *Fraccola*, and seeks a reversal of the decision that wrongdoing precipitated. As there, the Court here would have to review the propriety of the state court decision in order to evaluate Brodsky's claims.

Lastly, in *Sykes v. Mel S. Harris and Associates*, *LLC*, 780 F.3d 70 (2d Cir. 2015), the Second Circuit was faced with a case in which defendants allegedly submitted fraudulent documents to state courts. *See also Sung Cho*, 910 F.3d at 645 (citing *Sykes*, 780 F.3d at 94–95, in its *Rooker-Feldman* analysis). It held that *Rooker-Feldman* did not apply, since "the state court judgments [had not] caused plaintiffs' injuries" and so the claims brought in federal court

did not question the propriety of those judgments.  *Id.*  This is not the case with Brodsky's claims.  As the Court has made clear, Brodsky's injury is a direct result of the allegedly fraudulent decision made by Justice Rakower to garnish her ExxonMobil stock.  *Rooker-Feldman* prevents this Court from revisiting that decision.

The fourth requirement is also met.  The state court's judgment was initially rendered in 2007, and the latest state court judgment rejecting her request for relief occurred in 2014.  *Brodsky v. New York City Campaign Fin. Bd.*, 999 N.Y.S.2d 417, 418 (N.Y. App. Div. 2014).  The state court judgment was rendered before the district court proceedings commenced; accordingly, the cases are not parallel.

"A plaintiff cannot escape *Rooker-Feldman* simply by relying on a legal theory not raised in state court."  *Brodsky I*, 673 F. App'x at 43.  Though Brodsky did not bring a fraud on the court claim in state court, it is clear that she attempts to relitigate the claims she did bring in front of Justice Rakower in this Court now:  she seeks for this Court to find that Justice Rakower and Brodsky's adversaries committed fraud in state court, and for this Court, based on that finding of fraud, to therefore reverse Justice Rakower's state court order requiring Brodsky to repay the CFB.  *See McKithen v. Brown*, 481 F.3d 89, 97–98 (2d Cir. 2007) ("the applicability of the *Rooker-Feldman* doctrine turns . . . on the *causal relationship* between the state court judgment and the injury of which the party complains in federal court" (emphasis in original)).

Since all four of the requirements for the *Rooker-Feldman* doctrine are met, the Court does not have jurisdiction and therefore must dismiss Brodsky's claims.

### b.  Res Judicata

Even if the *Rooker-Feldman* doctrine did not apply, Brodsky's claims are nonetheless barred by *res judicata*.  The doctrine of *res judicata* broadly encompasses the notion that "a

right, question, or fact distinctly put in issue and directly determined by a court of competent jurisdiction, as a ground of recovery, cannot be disputed in a subsequent suit between the same parties or their privies." *Mitchell v. Nat'l Broad. Co.*, 553 F.2d 265, 268 (2d Cir. 1977) (quoting *Southern Pacific Railroad Co. v. United States*, 168 U.S. 1, 48 (1897)).

However, "[l]ike a river with more than one branch, *res judicata* embraces two concepts: issue preclusion and claim preclusion." *Murphy v. Gallagher*, 761 F.2d 878, 879 (2d Cir. 1985). The term "*res judicata*" is often used more narrowly in reference to claim preclusion—the concept that "a judgment, once rendered by a court of competent jurisdiction, will be treated thereafter as the full measure of relief to be accorded between the same parties on the same . . . [claim or] cause of action." *Id*. (*quoting Kaspar Wire Works, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 535 (5th Cir. 1978)) (internal quotation marks omitted).

In order to assert an affirmative defense of claim preclusion, a party must show that an earlier decision was:  (1) a final judgment on the merits made by a court of competent jurisdiction; (2) in a case involving the same parties or their privies; and (3) involving the same cause of action.  *MacKinnon v. City of New York/Human Resources Admin.*, 580 F. App'x. 44, 45 (2d Cir. 2014) (quoting *Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 221–22 (2d Cir. 2012)) (internal quotation marks omitted).

Defendants meet this burden here.  First, the Second Circuit has twice upheld the dismissal of Brodsky's claims:  the first on the basis of *Rooker-Feldman* and the second on the basis of *res judicata*.  It is true that "because a dismissal pursuant to Rule 12(b)(1) is not on the merits, it can have no *res judicata* effect."  *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1188 (2d Cir. 1996) (quoting *Exchange Nat'l Bank v. Touche Ross & Co.,* 544 F.2d 1126, 1130–31 (2d Cir. 1976), *modified on other grounds*, 726 F.2d 930 (2d Cir. 1984)).  Thus, the

instant case cannot be dismissed on the basis of *res judicata* as to *Brodsky II*.  However, there is still *res judicata* as to *Brodsky I*.  The Second Circuit explicitly stated in *Brodsky II* that "*Brodsky I* involved an adjudication on the merits."  *Brodsky I*, 796 F. App'x at 6.  As the Court has outlined, the claims that Brodsky asks it to adjudicate are the same here.  Judge Nathan ultimately dismissed *Brodsky II* precisely because *Brodsky I* had been decided on the merits.  In affirming Judge Nathan, the Second Circuit explicitly held that it "considered Brodsky's remaining arguments and f[ou]nd them to be without merit."  *Id*.

The second element is satisfied, too.  As defendants allege, the two parties at issue in all of the relevant cases are "structurally the same:  [Brodsky] and the CFB."  Doc. 18 at 8.  The Second Circuit has noted that "the question of privity in the claim preclusion context 'is a functional inquiry in which the formalities of legal relationships provide clues but not solutions." *Medcalf v. Thompson Hine LLP*, 84 F. Supp. 3d 313, 322 (S.D.N.Y. 2015) (quoting *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 346 (2d Cir. 1995).  Privity requires "that 'the new defendant [have] a sufficiently close relationship to the original defendant to justify preclusion.'" *Smith v. City of New York*, 130 F. Supp. 3d 819, 828 (S.D.N.Y. 2015) (quoting *Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995)).

The Court finds sufficient privity here.  First, the plaintiff and one of the defendants are precisely the same:  Brodsky sued the CFB in both *Brodsky I* and *Brodsky II*.  Second, while Brodsky adds Johnson as an additional defendant here, "[g]overnment officials sued in their official capacities are generally considered to be in privity with the government entity that they serve. *Id*. (quoting *Johnson v. Cty. of Nassau*, 480 F. Supp. 2d 581, 607 (E.D.N.Y. 2007)).

Johnson was the New York City Corporation Counsel when Brodsky filed the instant action. The Corporation Counsel's "primary function is to represent the City," *Mercurio v. City of New York*, 758 F.2d 862, 864 (2d Cir. 1985), and part of this duty includes representing the Campaign Finance Board. *See Brodsky II*, 796 F. App'x at 2 ("for defendants-appellees: . . . Corporation Counsel of the City of New York, New York, NY"). Since Johnson serves New York City generally, and served the Campaign Finance Board specifically, he is in privity with the defendants in *Brodsky I* and *Brodsky II*, and this element is therefore satisfied.[2]

The requirement that the claims involve the same cause of action is also met. Courts have interpreted this condition as requiring that "the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Smith*, 130 F. Supp. 3d at 828 (quoting *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir. 2015)). Again, like she did in *Brodsky II*, Brodsky here seems to attempt to circumvent preclusion by adding an additional cause of action—fraud on the court.

But, as defendants point out, Brodsky could have brought this claim in either *Brodsky I* or *Brodsky II*, as it arises from the same state lawsuit that preceded both of those cases. *See* Doc. 24 at 3–4. Brodsky "has been making the identical accusations of fraud for over a decade to the state Appellate Division, multiple Federal District Court Judges, and the Second Circuit, all of which have dismissed her actions." *Id*. at 4. And the Second Circuit recognized that "she *could* have raised [the new] claim [she added to *Brodsky II*] in *Brodsky I*" as well. *Brodsky II*, 796 F.

---

[2] It is worth noting that Brodsky similarly attempted to avoid privity in *Brodsky II* by adding a previous Corporation Counsel, Zachary Carter, to her claim, and the Second Circuit found his inclusion insufficient. As is the case here, "Brodsky solely allege[d] misconduct by the Board—and appear[ed] to name Carter [solely] because he is the City Corporation Counsel—[so her] arguments asserting a lack of privity between Carter and the Board are meritless." *Brodsky II*, 796 F. App'x at 4.

App'x at 5 (emphasis in original).  As all three aspects of claim preclusion are met, the Court

finds that it must dismiss Brodsky's claim as *res judicata*.

Brodsky argues that *res judicata* does not apply in this case, since "[s]ome courts have

held that *res judicata* does not apply if the previous judgment was procured by collusion or

fraud."  Doc. 21 at 5 (quoting *Holmes v. City of New York*, No. 19 Civ. 1628 (ER), 2020 WL

918611, at *7 (S.D.N.Y. Feb. 26, 2020)) (citing *In Re Ward*, 423 B.R. 22, 29 (Bankr. E.D.N.Y.

2010)).  This narrow exception only applies to so-called "extrinsic fraud[, which] involves the

parties' opportunity to have a full and fair hearing," as opposed to "intrinsic fraud[, which]

involves the underlying issue in the original lawsuit."  *Id*. (internal quotation marks and citations

omitted).

Brodsky alleges that the relevant fraud is extrinsic, since, in her words, "an officer of the

court in collusion with board staff or assistant corp. counsel is a classic case of fraud on the

court, 'extrinsic,' not 'intrinsic' fraud."  Doc. 21 at 5 (emphasis omitted).  This is incorrect.

First, the judgments against Brodsky were not default judgments, but adjudicated motions to

dismiss—in which Brodsky submitted briefing and in which the courts were obligated to accept

all factual allegations in her complaint as true and draw all reasonable inferences in her favor.

*Christie's Int'l PLC*, 699 F.3d at 145 ("we accept as true the facts alleged in the Complaint,

drawing all reasonable inferences in favor of the plaintiff").  Second, as defendants submit,

Brodsky's claims are precluded by *Brodsky I* and *II*, not by the state court cases.  Doc. 18 at 9.

Both federal suits alleged that fraud occurred in state court, and Brodsky's instant complaint asks

the Court to provide relief for that same fraud.  So the act of fraud at issue here was the same

"underlying issue in the original lawsuit"—alleged fraud is what led to Brodsky filing *Brodsky I*

14

and *Brodsky II*.  The fraud is therefore intrinsic.  *Holmes*, 2020 WL 918611, at *7.  The extrinsic fraud exception to *res judicata*, then, does not apply.

## IV.    CONCLUSION

For the foregoing reasons, the motion to dismiss is GRANTED.  The Clerk of Court is respectfully directed to terminate the motion, Doc. 17, and close the case.

It is SO ORDERED.

Dated:    July 19, 2022
          New York, New York

          _____

                    Edgardo Ramos, U.S.D.J.